UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASOUD GITIFOROOZ,<br>Petitioner,<br>v.<br>JASON KNIGHT, et al.,<br>Respondents. | Case No. 1:26-cv-02859-KES-HBK (HC)<br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS[1]<br>(Doc. 1)<br>FIVE (5) DAY OBJECTION PERIOD |

Petitioner Masoud Gitiforooz, an immigration detainee in U.S. Immigration and Customs Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, filed this counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 on April 15, 2026. (Doc. 1, "Petition"). Petitioner alleges that his continued post-final-order detention violates due process because he did not receive notice of the decision on his 90-day custody review under 8 C.F.R. § 241.4. (*Id*. at 1). Petition seeks, *inter alia*, release from custody. (*Id*. at 7).

Respondents contend that Petitioner's detention remains reasonable because there is a significant likelihood of removal in the reasonably foreseeable future. (Doc. 7). Petitioner did

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

not reply. (*See* docket). On August 19, 2026, the Court ordered Respondents to file supplemental briefing regarding the status of removal proceedings and whether Petitioner's removal is significantly likely in the reasonably foreseeable future. (Doc. 11). Respondents timely responded that ICE is seeking travel documents from Iran and is in active communications with the Iranian Embassy. (Doc. 12). Petitioner did not respond to the supplemental briefing. (*See* Doc. 11 (affording Petitioner seven days to respond).

The undersigned recommends the district court grant the Petition for the reasons set forth below.

I. BACKGROUND

Petitioner, a native and citizen of Iran, entered the United States on or about August 8, 1994, on a B-2 visa with authorizing him to remain until February 7, 1995. (Doc. 7-1 at 2, ¶ 5; Doc. 7-2). He remained beyond the authorized date. (*Id.*). On December 16, 2002, Petitioner was served with a Notice to Appear ("NTA") charging removability under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted. (Doc. 7-1 at 2, ¶ 6; Doc. 7-2). He was released that day on an Order of Recognizance. (Doc. 7-3).

On August 9, 2005, Petitioner was convicted in California state court of assault likely to produce great bodily injury, in violation of California Penal Code ("CPC") § 245(a)(1), and sentenced to two years' imprisonment. (Doc. 7-1 at 2, ¶ 8; Doc. 7-4 at 2). On December 7, 2005, an Immigration Judge ("IJ") granted Petitioner voluntary departure. Petitioner departed the United States on December 28, 2005. (Doc. 7-1 at 2, ¶ 9-10; Doc. 7-6).

Petitioner reentered the United States on June 1, 2006, after falsely claiming to be a United States citizen. (Doc. 7-1 at 3, ¶ 11; Doc. 7-4 at 2). On May 2, 2008, he was served with a NTA charging removability under 8 U.S.C. § 1227(a)(3)(D) (false claim of citizenship), 8 U.S.C. § 1227(a)(1)(A) (inadmissibility at entry); and 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony conviction). (Doc. 7-1 at 3, ¶ 12; Doc. 7-7). On May 14, 2008, an IJ ordered Petitioner removed to Iran, or alternatively, to Turkey. (Doc. 7-1 at 3, ¶ 13; Doc. 7-8).

On or about August 26, 2008, Petitioner was released from custody under an Order of Supervision ("OSUP"). (Doc. 7-1 at 3, ¶ 14). While on supervision, he was arrested on multiple

occasions, including for first degree murder, domestic violence, domestic battery, infliction of corporal injury to spouse or cohabitant, grand theft, money or labor offenses, driving with a suspended license, and possession of a controlled substance. (Doc. 7-1 at 3, ¶ 15). He was also convicted multiple times of driving under the influence, driving with a suspended license, and probation violations. (Doc. 7-1 at 4, ¶ 16).

Most recently, on December 5, 2025, Petitioner was arrested in Nevada for deceptive trade practices involving $5,0000 or more in violation of Nevada Revised Statutes ("NRS") § 598.0999, two counts of operating a vehicle dealership without a license or certification in violation of NRS § 482.322.5, and two counts of selling or offering for sale a motor vehicle valued at $650 or more in violation of NRS § 482.547.3. (Doc. 7-1 at 3, ¶ 17). On December 8, 2025, ICE took Petitioner into custody after release from Henderson Detention Center and revoked his OSUP. (Doc. 7-1 at 3, ¶ 19; Docs. 7-9, Doc. 7-10).

Petitioner remains detained at the California City Immigration Processing Center. (Doc. 1).

## II. APPLICABLE LAW AND ANALYSIS

A district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts retain jurisdiction over habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

### A. Statutory and Regulatory Framework

Detention, release, and removal of noncitizens subject to a final order of removal are governed by 8 U.S.C. § 1231. The Government generally must remove the noncitizen within a 90-day removal period. 8 U.S.C. § 1231(a)(1). If removal does not occur during that period, the noncitizen is generally subject to supervision. *Id.* § 1231(a)(3). Section 1231(a)(6) authorizes continued detention of certain noncitizens beyond the removal period, including individuals who are inadmissible, removable on specified criminal grounds, a danger to the community, or

unlikely to comply with the removal order.

Under *Zadvydas v. Davis*, detention under § 1231(a)(6) is presumptively reasonable for six months. 533 U.S. 678, 701 (2001). After that period, continued detention is not authorized when there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* ICE's implementing regulations govern release under an order of supervision and the revocation of that release. *See* 8 C.F.R. §§ 241.4, 241.13. Where, as here, a noncitizen is subject to a final order of removal, detained, released, and then re-detained, "it is [ICE's] burden to show a significant likelihood that the alien may be removed" under § 241.13. *Martinez v. Bondi*, 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (collecting cases); *Huang v. Albarran*, 818 F. Supp.3d 1154, 1161 (E.D. Cal. 2026).

The applicable regulations "generally require a custody review at the end of the 90-day removal period, a second review by a panel at ICE headquarters after six months of detention, and subsequent annual reviews." *Johnson v. Arteaga-Martinez*, 142 S.Ct. 1827, 1834-35 (2022); 8 C.F.R. § 241.4. The alien may submit documentation to support release and be assisted by an attorney or other person. (Doc. 1 at 11); 8 C.F.R. § 241.4(h)(2). DHS "will notify the alien in writing that he or she is to be released from custody, or that he or she will be continued in detention pending removal or further review of his or her custody status." 8 C.F.R. § 241.4(h)(4).

B. Analysis

Respondents offer no argument or evidence that they notified Petitioner of the 90-day custody review decision as required under § 241.4(h)(4). Agencies must follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes and Bands of the Yakima Indian Nation v. F.E.R.C.,* 734 F.2d 1347, 1355 (9th Cir. 1984). Respondents' failure to provide the required notice violated § 241.4(h)(4) and may also implicate Petitioner's due process rights. *See Diaz v. Wofford*, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *Junes v. Warden, Cent. Valley Annex Det. Facility*, 2026 WL 2627275, at *2 (E.D. Cal. Sept. 4, 2026) (collecting cases), *report and recommendation adopted sub. nom.*, *A.J. v. Warden, Cent. Valley Annex Det. Facility*, 2026 WL 2690699 (E.D. Cal. Sept. 11, 2026).

Respondents instead contend that Petitioner has not shown that removal is unlikely in the reasonably foreseeable future. (Doc. 7 at 4). That argument misallocates the burden. Petitioner had been released under an Order of Supervision ("OSUP") since approximately August 26, 2008. (Doc. 11-2 at 2). Such release follows a determination that the noncitizen does not pose a danger to the public or a flight risk. 8 C.F.R. § 241.13(b)(1). Once a noncitizen is released and later re-detained, ICE bears the burden under § 241.13(i) to establish either a violation of release conditions or changed circumstances demonstrating a significant likelihood of removal in the reasonably foreseeable future. *See Martinez*, 2025 WL 3650477, at *3; Ghiassi v. Murray*, 2026 WL 622184, at *4 (E.D. Cal. Mar. 5, 2026).

Respondents have not met that burden. Deportation Officer Christian Rivera states generally that Petitioner "repeatedly violated his OSUP" and the OSUP was revoked after ICE detained Petitioner on December 8, 2025. (Doc. 7-1 at 4, ¶¶ 18, 19; see also ¶ 17). But Respondents identify no specific release-condition that Petitioner violated and no changed circumstance that created a significant likelihood of removal. The record also does not include Petitioner's OSUP or a notice explaining the basis of its revocation. Although ICE issued a warrant of removal/deportation on December 8, 2025 (Doc. 7-9), and a "warning to alien ordered removed or deported" on December 9, 2025 (Doc. 7-10), neither document identifies an alleged release-condition violation or changed circumstances supporting re-detention. *See* § 241.13(i)(3).

Respondents principally rely on the assertions that ICE is seeking travel documents from Iran and is in active communication with the Iranian Embassy. (Doc. 12 at 1). Deportation Officer Travis Means attests that the Iranian Embassy in Washington, D.C. received Petitioner's travel document request, that the request is "currently being processed," and that, after review, the Iranian government "may" be willing to accept Petitioner. (Doc. 12-1 at 2, ¶ 5). He further states that ICE/ERO is actively "working toward establishing a pathway for charter flights to Iran," and "*should* ICE/ERO obtain a travel document, and *if* a charter flight is available, ICE/ERO is confident that Petitioner can be removed from the United States to Iran." (*Id*. at ¶¶ 6-7) (emphasis added).

Those assertions do not establish a significant likelihood of removal in the reasonably

foreseeable future. Respondents do not identify when they submitted the travel document request; what documents or information Iran requires; whether Iran has verified Petitioner's identity or nationality; whether Iranian authorities have taken any affirmative step toward issuing a travel document; or whether the Embassy has given ICE a projected decision date or commitment to issue a travel document. The initiation or pendency of a travel document request, without more, does not establish changed circumstance or a significant likelihood of reasonably foreseeable removal. *See Vue v. Warden of the Golden State Annex Detention Facility*, 2026 WL 482673, at *3 (E.D. Cal. Feb. 20, 2026); *Huang v. Albarran*, 818 F. Supp.3d 1154 at 1163; *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

Nor have Respondents shown that Iran has agreed, or is likely, to accept Petitioner. The declaration states only that Iran "*may* be willing to accept Petitioner" following an unspecified review. (Doc. 12-1 at 2, ¶ 5). That conditional statement establishes a possibility, not evidence of a reasonably foreseeable removal pathway. *See Vu v. Noem*, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025) ("The phrase 'significant likelihood,' as used in the regulation, requires something more than a mere possibility."); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur.").

The transportation evidence is also speculative. ICE/ERO states that it is "actively working toward establishing a pathway for charter flights to Iran," but identifies no authorized, arranged or charter flight; carrier; route; departure date; or anticipated placement of Petitioner on a flight. A prospective charter arrangement at present appears to be an aspiration, not evidence that removal is likely to occur in the reasonably foreseeable future.

Finally, the record contains no explanation why ICE was unable to obtain travel documents during the many years Petitioner was subject to an OSUP, or why removal is more likely now. That history is relevant to the reasonably foreseeable removal inquiry. 8 C.F.R. § 241.13(f); *see Phouvieng K.,* 2025 WL 3265504, at *6 (noting respondents do not explain why they have been unable to remove petitioner to Laos for the past 13 years); *Ghiassi*, 2026 WL

622184, at *6 (finding past difficulties in obtaining travel documents suggestive that removal is not reasonably foreseeable); *Hoac*, 2025 WL 1993771, at *4 (E.D. Cal. July16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Although Respondents do not state when they submitted the current travel document request, nearly ten months have elapsed since Petitioner's re-detention on December 8, 2026, without issuance of travel documents or identification of an available flight. That delay further weighs against finding that removal is reasonably foreseeable. *Yan-Ling X.*, 813 F. Supp. 3d at 1165.

For these reasons, Respondents have not established changed circumstances demonstrating a significant likelihood that Petitioner can be removed to Iran in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i). Respondents also failed to provide the written 90-day custody-review decision required by 8 C.F.R. § 241.4(h)(4). Accordingly, Petitioner's re-detention was not lawful under the governing regulations and violated due process.

Accordingly, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED as follows:

1. Respondents shall immediately release Petitioner from DHS custody subject to the conditions of his most recent Order of Supervision.
2. Respondents be enjoined from re-detaining Petitioner unless: (a) material changed circumstances establish a significant likelihood that Petitioner may be removed in the reasonably foreseeable future, as determined by a neutral decisionmaker; or (b) following a pre-deprivation bond hearing before a neutral decisionmaker, Respondents prove by clear and convincing evidence that Petitioner presents a flight risk or danger to the community sufficient to justify physical custody.

**NOTICE OF EXPEDITED OBJECTIONS**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the urgency of a preliminary injunction, a party may file written objections with the Court**

**within five (5) days of service of these Findings and Recommendations.** *Id.*; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: September 29, 2026

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE